In the Matter of EMIL H. REICHMAN, an Attorney, Respondent.

First Department, January 10, 1930.

*Isidor J. Kresel,* for the petitioners.

*Edwards, Murphy & Minton [John McK. Minton Jr.,* of counsel], for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York in June, 1916, at a term of the Appellate Division of the Supreme Court of the State of New York, Second Department.

The petition charges, upon information and belief, that the respondent has been guilty of misconduct as an attorney at law, in soliciting and employing divers persons, not members of the

bar of the State of New York, to solicit contracts and retainers from persons injured in accidents, retaining and authorizing respondent to act as their attorney to collect damages sustained by them as a result of such accidents, and to bring suits at law in their behalf to recover such damages; and, further, that respondent promised and gave divers persons not members of the bar valuable considerations for inducing persons injured in accidents to retain him as their attorney for the purpose of bringing actions or suits in their behalf. There are set out in the petition twenty-eight specific instances of solicitation by respondent's representative to have respondent retained as attorney.

In addition to these charges of solicitation, it is alleged in the petition that: "(ff) In or about the month of March, 1928, the respondent left the jurisdiction of the Supreme Court of the State of New York and for a period of about five months and until after the taking of testimony in the investigation conducted by Mr. Justice WASSERVOGEL, as alleged in paragraph III of this petition had been concluded, he remained out of the State of New York. By reason of respondent's absence from the State of New York it was impossible to serve a subpœna upon him or to procure his attendance as a witness in the course of said investigation. The respondent left the State of New York and remained out of said State as above stated, for the purpose and with the intent of avoiding the service upon him of a subpœna requiring him to appear as a witness in said investigation and to prevent the court and the persons conducting said investigation from ascertaining material facts regarding respondent's professional conduct as a member of the Bar of the State of New York and the practices and abuses which were the subject of the aforesaid investigation."

The respondent has filed an answer in which he admits all charges of solicitation. As to leaving the jurisdiction, respondent's answer sets forth: " *Second.* Respondent denies the allegations contained in the paragraph of the petition designated paragraph ' V,' subdivision (ff), except that he admits that in or about the month of March, 1928, he left the jurisdiction of this Court and for a period of about five months remained out of the State of New York; that a full statement of the circumstances under which respondent left the jurisdiction as aforesaid is as follows:

" That in the latter part of January, 1928, respondent applied to the Equitable Life Insurance Company for a policy of life insurance; that on February 4th, 1928, he was duly examined by a physician employed by the said Equitable Life Insurance Company, who thereupon found that respondent was suffering from a

chronic heart condition by reason of which the said Equitable Life Insurance Company refused to issue any policy except upon a rated basis; that he was informed at that time by a representative of the Equitable Life Insurance Company that his heart condition was such that any undue excitement or special strain might have serious consequences; that upon receiving this information respondent was naturally greatly distressed and frightened; that he then consulted his own physician who confirmed the statements made by the representative of the Equitable Life Insurance Company.

" That thereafter, and acting upon the advice of his own physician, he left the City of New York on or about the 3rd day of March, 1928, and went to Byram Lake Health Farm at Mount Kisco, Westchester County, New York, where he remained for about four days; that the surroundings at the Byram Lake Health Farm were so lonesome and depressing that respondent thereafter went to Atlantic City, where he remained until some time in the following June, and, after his return to New York City in June, 1928, he thereafter continued under the advice of his physician to rest and remain away from his office until September, 1928.

" That while he was in Atlantic City he received a communication from his wife that Mr. Justice WASSERVOGEL desired his presence as a witness in the investigation then being conducted by the said Justice; that, by reason of the medical advice which was then given to him and to his wife, it was decided that it would be most unwise solely by reason of his health, for him to return to New York and appear as a witness in the investigation; and that the respondent's wife so informed Mr. Justice WASSERVOGEL and counsel retained by the petitioners to assist in the conduct of the said investigation.

" In making the above statements, respondent does not in any sense wish to withhold or qualify the admissions hereinabove and hereinafter stated; doubtless the realization that he had permitted some solicitation to be done by investigators employed by him caused respondent great worry and mental anguish all of which played their part in so affecting his health as to induce the advice of his physician which he adopted as above stated."

By way of plea in mitigation he explains the manner in which he became a participant in what his counsel refers to as " this all too common method of procuring and fostering a negligence practice."

It is urged by his counsel that " *  *  *  we cannot escape the fact that such practices have existed for many years and also that

little effort heretofore has been made to check a condition everyone knew or strongly suspected to exist.

"The fact that a statute (Chapter 259, Laws of 1818, now Penal Law, § 274) has been in existence for over a century prohibiting this practice but that under that statute no prosecution of any attorney has ever taken place so far as we have been able to learn indicates how completely the community has winked at the practice and how lacking in moral turpitude such conduct as soliciting in and of itself has been regarded. The statute has been noted for its breach."

Further: "Nevertheless, in the light of these conditions we earnestly submit that the respondent's conduct can be more properly ascribed to a common and characteristic weakness and to imitation of others who seem to lose no caste by the practice, than to any deliberate, willful and wrongful attitude of mind on the subject. This Court will undoubtedly appreciate that in the hope and desire of a lawyer to increase his practice, with a limited circle of friends and acquaintances, how easy it is to fall into unethical practices when he is assailed by temptation on all sides and when he sees other members of the Bar to whom he should have the right to look up for guidance, doing the very things which the Canon of Ethics and the statute forbids."

There is submitted the affidavit of J. Douglas Malcolm, M. D., field medical examiner for the Equitable Life Assurance Society, who examined respondent on February 4, 1928, at the request of the Equitable Life Assurance Society in conjunction with an application for life insurance, and who found respondent suffering with irregular heart action and tachycardia, probable reason goitre (inflammation of the parotid gland).

There is also submitted the affidavit of Samuel Felder, respondent's family physician, who examined respondent in February, 1928, and found "he was suffering with marked cardiac irregularity and tachycardia which is paroxysmal in nature and probably due to a hyperactivity of the thyroid gland;" that he advised respondent against the least possible strain, nervous tension or mental irritability, and, therefore, deemed it best for him and advised him to absent himself from his office, and even from his home, in order to get the necessary rest and quiet; that he "further advised Mr. Reichman that the climate of Atlantic City was particularly salubrious for heart conditions." In March he was approached by Mrs. Reichman and asked what he thought the effect would be if Mr. Reichman subjected himself to the ordeal of an examination before Judge WASSERVOGEL in the matter of the ambulance chasing investigation, and he advised her that in his opinion such an experi-

ence with the accompanying excitement and mental and nervous strain would have an extremely serious effect on his health and might even prove fatal.

The respondent appears to have borne a good character, as shown by his character letters. But he was concededly guilty of " ambulance chasing " in its every sense and violated the civil and penal law in his practices. His weak heart condition, suddenly discovered as the investigation was about to begin, is no excuse for his flight from the State to a near-by watering resort where he could snap his fingers at the court. An honest lawyer does not so act. If he values his good name or the honor of the profession he belongs to, no illness which did not cripple him or confine him to his bed would prevent his answering the call of the court to aid in clearing up abuses and to protect his own honor.

The respondent should be suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.